CELIA L. McGUINNESS, ESQ. (SBN 159420)
STEVEN L. DERBY, ESQ. (SBN 148372)
DERBY, McGUINNESS & GOLDSMITH, LLP
200 Lakeside Drive Suite A
Oakland, CA 94612
Phone:  (510) 987-8778
Fax:  (510) 359-4414
info@dmglawfirm.com

Attorneys for Plaintiffs
TRACY ROUSSEAU and STAN ROUSSEAU

DOMINIQUE A. POLLARA, ESQ (SBN 141036)
POLLARA LAW GROUP
3600 American River Drive, Suite 160
Sacramento, CA 95864
Phone:  (916) 55-5880
Fax:  (916) 550-5066
dp@pollara-law.com

Attorneys for Defendants
ST. HELENA HOSPITAL and
ADVENTIST HEALTHCARE/WEST

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ROUSSEAU and STAN ROUSSEAU<br><br>Plaintiffs,<br><br>v.<br><br>ST. HELENA HOSPITAL; AND ADVENTIST HEALTHCARE/WEST,<br><br>Defendants. | Case No.  4:17-cv-02985 HSG<br><br>Civil Rights<br><br>**EXHIBIT A TO CONSENT DECREE AND [PROPOSED] ORDER AS TO INJUNCTIVE RELIEF O NLY** |

|   |   |
|---|---|
| ☐ **Entity(s):** | |
| ☐ **Network:** | |
| ☒ **Systemwide Corporate Policy** | **Entity(s) Policy No.** |
| **Corporate Policy No.** | **Page   1 of 3** |
| ☒ **Standard Policy** | **Department:** |
| ☐ **Model Policy:** | **Category/Section:** |
|   | **Manual(s):** |

### POLICY: SERVICE ANIMALS IN THE HEALTH CARE SETTING

**POLICY SUMMARY/INTENT:** The purpose of this policy is to promote patient safety, to provide guidance to accommodate the appropriate presence of service animals within Adventist Health facilities and departments, and to comply with the requirements of the Americans with Disabilities Act (ADA) and other State and federal requirements to provide access to individuals with disabilities who present with service animals.

**DEFINITIONS:**

1. **Americans with Disabilities Act (ADA)** – The ADA prohibits discrimination on the basis of disability in employment, state and local government, public accommodations, commercial facilities, transportation, and telecommunications. It also applies to the United States Congress. [1]

2. **Comfort Animal/Emotional Support Animal/Pet** – Animals whose sole function is to provide emotional support, comfort therapy, companionship, therapeutic benefits or to promote emotional well-being. [5]

3. **Disability** – An individual with a disability is defined by the ADA as a person who has a physical or mental impairment that limits or substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment. The ADA does not specifically name all of the impairments that are covered.[1]

4. **Service Animal** – Service animals are defined as dogs that are individually trained to do work or perform tasks for people with disabilities. [2]

    a. **Illustrative examples of these tasks include:**  A person with diabetes may have a dog that is trained to alert him when his blood sugar reaches high or low levels. A person with depression may have a dog that is trained to remind her to take her medication. Or, a person who has epilepsy may have a dog that is trained to detect the onset of a seizure and then help the person remain safe during the seizure. The ADA makes a distinction between psychiatric service animals and emotional support animals.  A dog that has been trained to sense that an anxiety attack is about to happen and take a specific action to help avoid the attack or lessen its impact, would qualify as a service animal. However, if the dog's mere presence provides comfort, that would not be considered a service animal under the ADA.

    b. The dog does not have to be professionally trained.  People with disabilities have the right to train the dog themselves.

    c. Any breed of dog may be used as a service animal.  A service dog may not be excluded based on its breed.

      d.      A service dog is not required to wear a special vest or identification or be registered or "certified" by any organization.

5. **Therapy Dogs** – Animals that provide people with therapeutic contact, usually in a clinical setting, to improve their physical, social, emotional, and/or cognitive functioning. [5]

6. **Direct Threat** – A direct threat is defined as a significant risk to the health or safety of others that cannot be eliminated or mitigated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids/services. [6]

**AFFECTED DEPARTMENT(S)/SERVICE(S):**

1. All departments and services

___

**POLICY: COMPLIANCE – KEY ELEMENTS**

A. **Service Animals**

1. Only dogs are recognized as service animals under title II and title III of the ADA. [2]

    a.    In certain situations, miniature horses that have been individually trained to do work or perform tasks for people with disabilities can be utilized as service animals; however, miniature horses are NOT permitted in the clinical setting at Adventist Health facilities. [2]

2. Service animals are working animals, not pets. The work or task a dog has been trained to provide must be directly related to the person's disability. [2]

3. Emotional support animals, comfort animals, and therapy dogs are not service animals under title II and title III of the ADA as these animals have not received the same training to do work or perform tasks for an individual with a disability. They are not entitled to the same access as a service animal. [2,5]

B. **Animals in the Health Care Setting**

1. The service animal may accompany a patient with a disability in all areas where members of the public, including patients, are allowed to go unless the presence of the animal creates a direct threat to other persons or a fundamental alteration in the nature of services provided. [2]

2. When a decision must be made regarding a service animal's access to any particular area of the health care facility, evaluate the service animal, patient, and health care situation on a case-by-case basis to determine whether a direct threat exists and whether reasonable modifications in policies, practices, and procedures will mitigate this risk. [3]

3. Areas that have restricted access include:

    a.    Central sterile supply areas and sterile and clean supply storage areas, burn units, and areas where the service animal or equipment may be harmed by exposure (e.g. metal is

        not allowed in a magnetic resonance imaging (MRI) room, and a dog that has a metal collar that cannot be removed or which has a metal surgical implant should be excluded). [3,4]

    b. Procedure areas where sterility is required, including but not limited to the operating rooms, cardiac catheterization suites, and endoscopy suites. [4]

    c. Establishments that sell or prepare food must allow service animals in public areas even if state or local health codes prohibit animals on the premises; however, service animals are not allowed in food and medication preparation areas where appropriate hygiene is required, including but not limited to kitchen, infant formula preparation room and areas in central and satellite pharmacies where the general public is not permitted. [2, 4]

4. Areas where access is not automatically restricted:

    a. Certain patient units do not automatically restrict access.  For example, in behavioral health units, or units where patients are immunocompromised or deemed at particularly high risk for infection or in isolation precautions, each situation requires an individual assessment of whether the presence of a service dog poses a direct threat, and possible modification of policies, practices, and/or procedures to ameliorate the threat if a direct threat is deemed to exist. The ADA does not require covered entities to modify policies, practices, or procedures if it would "fundamentally alter" the nature of the goods, services, programs, or activities provided to the public. Nor does it overrule legitimate safety requirements that cannot be ameliorated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids/services. If admitting a service animal in a specific circumstance would fundamentally alter the nature of a service or program, service animals may be prohibited.

5. Service animals must be harnessed, leashed, or tethered, unless these devices interfere with the service animal's work or the individual's disability prevents using these devices.

    a. In cases where the service animal cannot be harnessed, leashed, or tethered, the individual must maintain control of the animal through voice, signal or other effective controls.

C. **Inquiries**

1. If the staff cannot tell from the appearance of the service dog user what service an animal provides, the ADA provides for only limited inquiries.

2. Staff may ask two questions:

    a. Is the dog a service animal required because of a disability?

    b. What work or task has the dog been trained to perform? This may be asked only if it is not readily apparent what the dog has been trained to do.

3. Staff cannot:

    a. Ask about the person's disability.

    b. Require medical documentation.

    c. Require a special identification card, vaccination records, certification, license, or training documentation for the dog.

    d. Ask that the dog demonstrate its ability to perform the work or task.

D. Denying Access to a Service Animal

1. Individuals with disabilities who use service animals cannot be isolated from other individuals or treated less favorably.

2. Allergies and fear of dogs are not valid reasons for denying access or refusing service to people using service animals.

   a. When a person who is allergic to dog dander and a person who uses a service animal spend time in the same room or facility, they both should be accommodated by assigning them, if possible, to different locations within the room or different rooms in the facility.

3. A person with a disability cannot be asked to remove the service animal from the premises unless:

   a. The service animal is out of control and the handler does not take effective action to control.

   b. The service animal is not housebroken.

   c. After an individualized assessment, it is determined that the service animal otherwise presents a direct threat to the health or safety of others that cannot be mitigated.

      (1) The hospital shall make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures, or the provision of auxiliary aids or services will mitigate the risk. [6]

      (2) Any questions about this policy or its application should be directed to the Adventist Health Risk Manager.

      (3) If reasonable modifications of policies, practices, or the provision of auxiliary aids or services will mitigate the risk, then the service animal must be allowed to stay with its handler.

4. When there is a legitimate reason to ask that a service animal be removed, staff must offer to provide services without the animal's presence. Denying access to the animal is permissible in the proper circumstances, as outlined in this policy.

5. If a patient must be separated from his or her service animal while in the health care facility:

   a. Ascertain from the person what arrangements have been made for supervision or care of the animal during this period of separation.

   b. Make appropriate arrangements to address the patient's needs in the absence of the service animal. However, the fact that hospital staff can perform the same tasks as the service animal is not grounds for denying access to the service animal.

6. If the patient is not able to care for the service animal, the patient can make arrangements for a family member or friend to come to the hospital to provide these services, as it is always preferable that the service animal and its handler not be separated, or to keep the dog during the hospitalization.

7. If the patient is unable to care for the dog and is unable to arrange for someone else to care for the dog, the hospital may place the dog in a boarding facility until the patient is released, or make

      other appropriate arrangements. However, the hospital must give the patient the opportunity to make arrangements for the dog's care before taking such steps.

E. **Charges and Fees**

1. Individuals with disabilities who use service animals cannot be charged fees that are not charged to individuals without service animals.

2. If the hospital normally charges individuals for damage that they cause, a person with a disability may be charged for damage caused by his or her service animal.

F. **Special Considerations**

1. Staff are not required to provide care or food for a service animal. Individuals with disabilities, or their designee/legal representative, are responsible to care for the service animal or make arrangements for someone other than a staff member to provide care for the service animal.

2. Individuals with disabilities are responsible to provide for the needs of the service animal when the service animal is on Adventist Health property.

G. **Infection Control** [3]

1. Service animals in the facility should be clean and well-groomed, vaccinated, free of fleas, ticks, lice, or intestinal parasites. Animals with any sign of illness (e.g., diarrhea, skin lesions, or excessive scratching/chewing), will not be allowed to enter the facility.

2. Infection Prevention should be notified when there is an infection prevention concern present (i.e. open wound). [4]

3. Individuals with disabilities should be advised that animals should not lick or come in contact with open wounds, dressings, or devices.

4. Minimize contact with animal saliva, dander, urine, feces.

5. A barrier such as a sheet or towel may be used if the service animal comes in contact with the bed or other furniture.

6. Practice hand hygiene after any animal contact:

   a. Wash hands with soap and water, especially if hands are visibly soiled or contaminated with proteinaceous material.

   b. Use soap and water or alcohol-based hand rubs when hands are not visibly soiled or contaminated.

7. No special housekeeping methods are required for areas where a service animal has been unless the area has been contaminated by animal urine, feces, vomit or blood.

8. Animal contaminated areas (urine, feces, vomit, blood) shall be cleaned by:

   a. Donning gloves at a minimum. If soiling of clothing is anticipated, also wear a gown to prevent contamination.

   b. Urine, feces, vomit/and/or blood shall be removed with paper towels and disposed in a leak resistant plastic bag into a trash container.

   c. The contaminated area shall be cleaned with the hospital's approved disinfectant following manufacturer's directions.

d.    Remove gloves and gown, if applicable, and thoroughly wash hands.

_____

| | |
|---|---|
| **REFERENCES:** | 1. ADA.gov. (2009 July). A guide to disability rights laws. Retrieved October 12, 2016, from, https://www.ada.gov/cguide.htm<br>2. ADA.gov. (2011, July, 12). Service animals. Retrieved October 12, 2016, from, https://www.ada.gov/service_animals_2010.htm<br>3. CDC. (2003, June, 6). Guidelines for environmental infection control in health care facilities. Recommendations of CDC and the health care infection control practices advisory committee (HICPAC). Retrieved, October 13, 2016, from, https://www.cdc.gov/mmwr/preview/mmwrhtml/rr5210a1.htm<br>4. Rekha Murthy, Gonzalo Bearman, Sherrill Brown, Kristina Bryant, Raymond Chinn, Angela Hewlett, B. Glenn George, Ellie J.C. Goldstein, Galit Holzmann-Pazgal, Mark E. Rupp, Timothy Wiemken, J. Scott Weese and David J. Weber Animals in health care facilities: Recommendations to minimize potential risks. Infection Control & Hospital Epidemiology, Available on CJO 2015 doi:10.1017/ice.2015.15<br>5. Service Animals. 2012 Consent Law Seminar<br>6. 28 CFR Section 36.208(b), 28 CFR Section 35.139(b).<br><br>**California:**<br>Nolo. (n.d). California laws on psychiatric service dogs and emotional support animals in public places. Retrieved, October 13, 2016, from, http://www.nolo.com/legal-encyclopedia/california-laws-psychiatric-service-dogs-emotional-support-animals-public-places.html<br><br>**State of California Department of Fair Employment and Housing. Service animal laws: Comparison chart. (n.d). Retrieved October 13, 2016, from, https://www.dor.ca.gov/DisabilityAccessInfo/DAS-Docs/SERVICE-ANIMAL-LAWS.pdf** |
| **CALIFORNIA:** | **No specific state requirements noted. Corporate policy applies as written.** |
| **HAWAII:** | **Michigan State University. (2015, October). Service dog, defined. Retrieved October 13, 2016, from, https://www.animallaw.info/statute/hi-assistance-animal-assistance-animalguide-dog-laws#s34725** |
| **OREGON:** | **OregonLaws.org. (n.d). Assistance animals. Retrieved October 13, 2016, from, http://www.oregonlaws.org/ors/659A.143** |
| **WASHINGTON:** | **Washington State Legislature (n.d) Use of dog guide or service animal-unfair practice-definition. Retrieved October 13, 2016, from, https://app.leg.wa.gov/rcw/default.aspx?cite=49.60.218** |
| **AUTHOR:** | **Program Manager, Risk** |
| **SITE SPECIFIC POLICY OWNER:** | **Not applicable** |
| **COLLABORATION:** | |
| **APPROVED_BY:** | |
| **CORPORATE:** | |

**HOSPITAL [name of approval committee, date approved]:**
**REVIEW DATE:**
**REVISION DATE:**
**ATTACHMENTS:**
**DISTRIBUTION TO: Refer to AFFECTED DEPARTMENTS/SERVICES above**

**ENDNOTES:**